**FILED**

**FEB 2 9 2012**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| KELLY JO SUTER, Ph.D. § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CAUSE NO. SA-10-CV-00692-OLG | |
| § | | |
| THE UNIVERSITY OF TEXAS AT § | | |
| SAN ANTONIO, § | | |
| GEORGE PERRY, PHD, § | | |
| JAMES M. BOWER, PHD, § | | |
| MATTHEW J. GDOVIN, PHD, § | | |
| ROBERT W. GRACY, PHD, § | | |
| J AARON CASSILL, PHD., and § | | |
| EDWIN J. BAREA-RODRIGUEZ, PHD, § | | |
| Defendants. § | | |

**O R D E R**

Before the Court is Defendants' Motion to Dismiss and for Summary Judgement (doc. no. 51), Plaintiff's Response (doc. no. 68), and Defendants' reply (doc. no. 71). For the reasons discussed below, the Defendants' Motion is GRANTED.

In this case, the Plaintiff is a Biology professor at Defendant University. Her claims arise out of alleged negligence, breach of contract, and breach of fiduciary duty on the part of several of the University's employees, sued in their individual capacities, as well as alleged violations of the Equal Pay Act, 29 U.S.C. § 206, by the University itself. Despite suffering no economic harm, Plaintiff contends that Defendant's actions were a partial factor in a one-year delay of her research.

Professor Suter earned her Ph.D. from the University of Pittsburgh before completing post-doctoral work at Colorado State University and working as a research associate and assistant professor at both Emory University and the University of Louisville. Professor Suter left Louisville after only four months in 2006 when she realized that there was not sufficient start-up resources

available for her research.

On May 30, 2006, Dean George Perry of the UTSA College of Science offered Plaintiff a position at UTSA as an assistant professor effective July 1, 2006, which she accepted. The terms of the offer included a nine-month salary of $75,000.00; a release from teaching for one-year; $200,000 in equipment funding ($100,000 of which was to come from a federal grant called the "Research Centers in Minority Institutions" or "RCMI"); $30,000.00 in supply funding; and moving expenses. Plaintiff also negotiated for an additional $100,000 in funding that would originate with the University of Texas Health Science Center in San Antonio. It is undisputed that all of this funding was not the property of the Plaintiff, but rather, the public, with the University as the funding's steward. Plaintiff arrived at UTSA on June 28, 2006. She was immediately assigned lab space, visited with human resources personnel, and began to move boxes into her assigned space. A formal "appointment" letter was issued by University administration in August 2006.

According to UTSA's RCMI grant coordinator, "The RCMI grant 'cycle' is five years in length, and each budget-year of the RCMI grant begins on August 1 and ends on July 31. Dr. Suter joined [the] Department in year two of the five- year grant cycle (in July 2006); Dr. Santamaria arrived in year three (in 2007); and Dr. Troyer arrived in year four (in 2008) of the cycle." Additionally, "[b]ecause Kelly Suter arrived in July 2006—late in the budget year for the grant—compliance with the state's purchasing requirements was difficult and time expired for her to procure equipment and expend the $100,000 [in equipment funding] available and allocated for her during that second budget year of the grant cycle." By September 2006, the University had started a carry-forward request so that Plaintiff could access the $100,000 in equipment funding after July 2006. The Plaintiff claims that, had she known some of the funding was subject to a carry-

forward request, she would not have accepted the offer of employment. The RCMI federal grant program approved the carry-forward request, but it was not made immediately available, and Plaintiff alleges that she first became aware that it was not available in October of 2006. The additional $200,000 ($100,00 each from UTSA and the UT Health Science Center) was made available to the Plaintiff, with only slight delay of the UT Health Science Center funds due to the Plaintiff's own request to halt the transfer. When, exactly, the RCMI funds became available to the Plaintiff is disputed, but UTSA provided partial "bridge funding" in May 2007 to replace the RCMI funds that had not yet been released. When the RCMI funding ultimately did come through, the bridge funding was not deducted from that amount—ultimately giving the Plaintiff more than $50,000 in addition to her originally agreed funding.

Plaintiff's claims against the university employees in this case stem from this lack of funding that allegedly caused the Plaintiff to lose an entire year of research at UTSA. The claims against the University stem from alleged unequal treatment compared to two male professors who had received their RCMI funding (professors hired in subsequent years who were not subject to filing a carry-forward request for funds) as well as different rates of pay.

The University notes that despite granting Plaintiff's request for an additional year before the Plaintiff would have been up for tenure review, when the Plaintiff requested early tenure, the University entertained that request and ultimately promoted the Plaintiff to "Associate Professor with tenure" effective September 1, 2011.

A. **Tort Claims**

Against the individual defendants Perry, Cassill, Gracy, Gdovin, and Bower, Plaintiff alleges tort claims for negligence, negligent misrepresentation, breach of fiduciary duty, and tortious

3

interference with contract. With the exception of the breach of fiduciary duty claims, each of these claims is subject to a two-year statute of limitations. *See KPMG Peat Marwick v. Harrison County Housing Finance Corp.*, 988 S.W.2d 746, 750 (Tex. 1999) (negligence); *Hendricks v. Thornton*, 973 S.W.2d 348, 364 n. 19 (Tex. App.—Beaumont 1998, pet. denied) (negligent misrepresentation); *Milestone Properties, Inc. v. Federated Metals Corp.*, 867 S.W.2d 113, 118-119 (Tex. App.–Austin 1993, no writ) (negligent misrepresentation); *Snyder v. Eanes Independent School Dist.*, 860 S.W.2d 692, 699 (Tex. App.—Austin 1993, writ denied) (tortious interference with contract). Though it is likely that any such claims arose before this time, in February 2008, the Plaintiff initiated the first of several formal complaints against University employees for mishandling her "start-up" funds. It is clear that this is the *latest possible* time at which the Plaintiff knew, or should have known of the existence of any of these claims. Because the original complaint in this case was not filed until July of 2010, each such claim is barred by limitations. These claims are DISMISSED WITH PREJUDICE.

### B. Fiduciary Duty Claims

In regard to the Plaintiff's breach of fiduciary duty claims—subject to a four-year statute of limitations—the Plaintiff's claims are likewise barred. Any such claim for breach of fiduciary duty would have arisen when the funds were not "immediately available" upon her employment date of July 1, 2006. In her response to the Motion to Dismiss, the Plaintiff claims that the date of injury was deferred subject to the discovery rule or to fraudulent concealment, but Plaintiff has failed to sufficiently plead this defense to limitations or to plead facts that would properly put the defendant on notice of such a defense. *See Matter of Placid Oil Co.*, 932 F.2d 394, 399 (5th Cir. 1991) (noting that defenses to the statute of limitations must generally be pleaded and proved by the plaintiff);

*Colonial Penn Ins. Co. v. Mkt. Planners Ins. Agency, Inc.* 1 F.3d 374, 376 (5th Cir. 1993) (noting that the discovery rule must at least be plead by sufficient facts). Moreover, even if it had been properly pled, Plaintiff wholly fails to establish the defense by proof on summary judgment. Plaintiff filed her lawsuit more than four years after her claim for breach of fiduciary duty, if any, arose. Assuming a fiduciary duty in fact existed at all, her claims are barred by the statute of limitations. *See generally City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000) (noting that there is no duty of good faith and fair dealing in the employment context, making it unlikely that a fiduciary duty existed in this case, even if the claim was not barred by limitations ). These claims are DISMISSED WITH PREJUDICE.

### C. Contract Claims

For the same reasons that a fiduciary duty claim is barred, the breach of contract claims against individual defendants Perry and Bower are also barred by the four-year statute of limitations. If a breach occurred at all, it would have occurred when the funds were not "immediately available" upon the Plaintiff's employment on July 1, 2006. Failure to file the complaint in this case before July 1, 2010 barred these claims, and the Plaintiff failed to properly plead and prove sufficient facts to support her allegations of fraudulent concealment or the discovery rule. Moreover, Texas law prevents an employee who contracts on behalf of an employer to thereafter be *personally* liable for a breach in the employment contract. *See, e.g., Pabich v. Kellar*, 71 S.W.3d 500, 506 (Tex. App.—Fort Worth 2002, pet. denied). Accordingly, in this case, no relief could be granted against the university officers, Perry and Bower, who allegedly breached the employment contract with the Plaintiff. The breach of contract claims are DISMISSED WITH PREJUDICE.

### D. Section 1983 Claim

Additionally, the Plaintiff seeks to hold Defendant Barea-Rodriguez liable under 42 U.S.C. § 1983 for violating the Equal Pay Act—despite also naming the University as a Defendant under the Equal Pay Act. Remedial redundances against individuals under § 1983, such as seeking damages from both the individual under and the University in this case, have been rejected by the courts. *See Pena v. Bexar County, Texas*, 726 F.Supp.2d 675, 688-89 (W.D. Tex. 2010) ("The [Fifth Circuit] held that because Congress has provided a specific comprehensive internal enforcement mechanism to protect the rights [in the underlying federal provision] . . . it would assume that Congress intended to foreclose resort to the more general enforcement provisions of section 1983 to vindicate the rights created by the Rehabilitation Act") (quotations omitted); *see also Hooker v. Dallas Independent School Dist.*, 2010 WL 4025877, *8 (N.D. Tex. 2010) ("Plaintiffs cannot state a § 1983 claim based on alleged violations of the Rehabilitation Act, the ADA, or the IDEA because each of these laws provides a comprehensive remedial scheme through which plaintiffs can obtain relief."); *Sturza v. Loadmaster Engineering, Inc.*, 2008 WL 1967102, at * 4 (S.D. Tex., 2008) (applying this doctrine to the FMLA). Here, Plaintiff's § 1983 claim against Barea-Rodriguez is the same kind of "piggy back" claim that was barred in these previous cases. The Equal Pay Act provides an adequate remedy for the Plaintiff's alleged violations, to the exclusion of a redundant claim under § 1983. Therefore, the Plaintiff's § 1983 claim is improper and is hereby DISMISSED WITH PREJUDICE.

### E. Equal Pay Act Claim

The Court now turns to the Plaintiff's remaining cause of action under the Equal Pay Act. The Fifth Circuit has defined the scope of this cause of action:

> The EPA prohibits employers from discriminating on the basis of sex by paying wages to employees of one sex that are less than the rate paid employees of the opposite sex for equal work on jobs that require equal skill, effort, and responsibility and are performed under similar working conditions. 29 U.S.C. § 206(d)(1). To establish a prima facie case under the EPA, [a plaintiff] must show 1. "[the defendant] is subject to the Act; 2. she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and 3. she was paid less than the employee of the opposite sex providing the basis of comparison." *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir.1993) (footnote omitted). [The plaintiff] must show that any pay disparity is a result of sex and cannot be attributed to any other factor, and she must also show that her male comparators hold positions that require virtually identical skills, effort, and responsibilities. 29 U.S.C. § 206(d)(1); *Brennan v. City Stores, Inc.*, 479 F.2d 235, 238 (5th Cir.1973). "If the plaintiff meets this burden, the burden of proof 'shifts to the employer to show that the differential is justified under one of the Act's four exceptions.'" *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir.1983).

*Stith v. Perot Systems Corp.*, 122 Fed.Appx. 115, 119 (5th Cir. 2005).

The four affirmative defenses to a prima facia case under the EPA are: "(1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor than sex." *Siler–Khodr v. Univ. of Tex. Health Science Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir.2001).

In this case, Defendant UTSA has shown by summary judgment evidence that (1) the starting salaries for professors in the Department have varied from negotiation to negotiation depending partially on competing offers of employment—for example, Dr. Gary Gaufo "negotiated a favorable starting salary causing his pay as an assistant professor to equal $80,000 (9-month term) by September 2004" ($5,000 more than Plaintiff's starting salary) due to his training under a distinguished scholar who later won the Nobel Prize; (2) UTSA operates on a system of variable annual merit raises that take into consideration a professor's starting salary, his or her seniority of service, and a four-point (1 – 4) partially-self-graded evaluation of performance in teaching, research,

and service; (3) in the Academic Year 2011, of thirteen professors that were employed by UTSA in its Biology Department, six (6) of them earned a salary that is greater than the Plaintiff's salary. Of these six professors—Drs. Wicha, Wei, Chaudry, Gaufo, Paladini, and Santamaria—all but one of them had more seniority in the Department than the Plaintiff. (4) Of the three professors hired under the RCMI "faculty development core" (the Plaintiff and two male professors: Santamaria, and Troyer) each began with an identical salary—$75,000; (5) beginning in Academic Year 2009, Troyer began earning *less* than Plaintiff, as he has each year since; (6) in the first year that either Plaintiff or Santamaria experienced any salary increase—Academic Year 2009—Santamaria's salary increased to $77,436 and the Plaintiff's salary increased slightly less, to $77,250 due to his slightly better performance rating that year than the Plaintiff's rating; (7) in September 2010, when no professor received a permanent merit-increase in his or her salary, UTSA distributed one-time bonuses that resulted in Plaintiff receiving about $390.00 more than Santamaria ($1,820 versus $1,430) resulting from a better annual evaluation rating for Plaintiff than Santamaria; (8) during the pendency of this lawsuit, Plaintiff was granted early promotion to Associate Professor with tenure, accompanied by a $5,000 annual salary increase. This evidence shows that justification exists for any variances in pay between professors with similar qualifications. Assuming, without deciding, that the Plaintiff met her initial burden of showing a prima facia case under the Equal Pay Act, no genuine issue of fact exists that would allow her to recover under the EPA. Accordingly, Defendant's motion for summary judgment is GRANTED as to Plaintiff's EPA claim.

For the reasons set out above, all claims against the individual defendants are DISMISSED, and the Defendant's motion for summary judgment on the EPA claim against the University is GRANTED.

Signed this \_\_\_\_29\_\_\_ day of \_\_\_February\_\_\_, 2012.

                                                HONORABLE ORLANDO L. GARCIA
                                                UNITED STATES DISTRICT JUDGE